IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GREGORY FAMOUS                    :   JURY TRIAL DEMANDED
ZACHARY FAMOUS                    :
117 North Essex Ave.              :
Apt B201                          :
Narberth, PA 19804                :
                                  :   CIVIL ACTION NO. 2:23-cv-00161
          Plaintiffs,             :
                                  :
     v.                           :
                                  :
SOVEREIGN PROPERTY                :
MANAGEMENT,                       :
100 Lerch Circle                  :
Suite 301                         :
Newport, DE 19804                 :
                                  :
          Defendant.              :

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

AND NOW, comes plaintiffs by and through their attorneys, and demand injunctive relief

and damages from defendant, and in support thereof set forth the following allegations and claims

in this Amended Complaint:

I. THE PARTIES

1.      Plaintiff Gregory Famous is a Pennsylvania resident residing at 191 Presidential

Boulevard in Bala Cynwyd, PA 19004. He is a Pennsylvania resident and the father of Zachary

Famous. He brings this action in his own right, as a co-signer of the lease entered into by Zachary

for an apartment in a building owned and managed by defendant.

2.      Plaintiff Zachary Famous is a Pennsylvania resident residing at the Brenton Hall

Apartments, 117 North Essex Avenue, Apt. B201, in Narberth, PA ("the leased premises"). He is

a Pennsylvania resident. Zachary Famous has been diagnosed as being on the Autism Spectrum and with Intellectual or Developmental Disability ("IDD"), and he has received and continues to receive medical and therapeutic treatment on a weekly basis for his condition.

3.    On information and belief, at all times relevant to this proceeding, defendant Sovereign Property Management ("Sovereign"), the apartment building owner and manager, has been aware of Zachary Famous's condition.

4.    Defendant Sovereign is a Delaware corporation with its principal place of business at 100 Lerch Circle, Suite 301, Newport, Delaware 19804, and it is the owner and/or manager of the leased premises, and thus is doing business in this District..

## II.  JURISDICTION AND VENUE

5.    This is a civil action seeking injunctive relief and money damages from defendant for committing acts in violation of the Fair Housing Act, 42 U.S.C. §§ 3601-3619, which are depriving plaintiff Zachary Famous and his father of rights secured to them under these laws and under the law of Pennsylvania.

6.    This Court's jurisdiction to adjudicate plaintiffs' claims is predicated, *inter alia*, upon 28 U.S.C. §§ 1331 and 1343. Plaintiffs' federal claims arise pursuant to the Fair Housing Act, specifically 42 U.S.C. § 3613(a)). Plaintiffs also invoke the Court's supplemental jurisdiction pursuant to 28 U.S. C. §1367.

7.    Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391(b) because plaintiffs reside in the District, and because all claims arose within the District.

## III.  FACTUAL ALLEGATIONS

8.    Plaintiffs incorporate herein by reference the averments set forth in preceding paragraphs 1 through 7.

9.      Plaintiffs entered into a written lease for the leased premises on September 1, 2021 with a term of 12 months, automatically renewed upon the continued payment of rent by plaintiffs. Plaintiffs satisfied all conditions of the lease agreement and, in August 2022, defendant offered them the opportunity to renew the lease, which they did. *See* Exhibit "A."

10.     On or about, September 25, 2022, another tenant at Brenton Hall called the Borough of Narberth Police Department with a complaint about Zachary Famous. According to the Police Report, attached as Exhibit "B," a female tenant "was beginning to feel uncomfortable around Zachary" because he had left his apartment to greet her several times and had been wearing only his boxer shorts. The complainant said that Zachary did not show his genitals or touch himself, or her, and stated she did not want to press charges but wanted the police "to talk to" Zachary about his conduct.

11.     The investigating officer noted in the incident report that, upon speaking with Zachary, it was immediately apparent that he had a developmental disability. *See* Exhibit "B." The officer talked briefly to Zachary and told him that he was not to leave his apartment unless fully clothed and that he should discuss the situation with his therapist, and Zachary agreed to do so. *Id.* No charges were filed, and there have been no further incidents involving Zachary.

12.     Despite that, defendant subsequently advised Gregory Famous, Zachary's father, that they wanted Zachary to vacate the premises by October 31, 2022, apparently because Zachary had made the complaining female tenant "uncomfortable."

13.     In an attempt to resolve the matter, the undersigned suggested to defense counsel that the plaintiffs were requesting a reasonable accommodation, namely that Zachary would agree not to leave his apartment unless fully dressed and, if he failed to comply, he would voluntarily agree to vacate the leased premises.

3

14.     Defendant originally was unwilling to agree to that condition and insisted that Zachary vacate the leased premises, but then the parties reached a resolution of the matter consistent with the proposal set out above, which the parties entitled a *Tenancy Agreement*.

15.     Thereafter, defendant beached that agreement and, notwithstanding the agreement reached in the *Tenancy Agreement*, issued a Notice to Vacate the premises on or about January 1 3, 2023. *See* Exhibit "C."

16.     Plaintiffs bring this action because Zachary's conduct, while perhaps not appropriate, was neither violative of the law or the terms of the lease, but apparently created an issue for defendant because it believes that Zachary's disability makes him an undesirable tenant, and that Zachary's autism and IDD are such that Zachary cannot conform his behavior to the satisfaction of defendant. This unsupported supposition on defendant's part, that Zachary's disability makes him an undesirable or unattractive tenant for defendant and other residents, is precisely the sort of conduct that remedial statutes such as the FHA were intended to guard against.

17.     At no time did Zachary engage in any overtly sexual conduct or touch himself or the complainant or display himself beyond what may be typically seen at a beach or swimming pool. Zachary did not engage in threatening or aggressive behavior, and further has agreed that the conduct cannot re-occur, and he understands the consequences if it does.

18.     On the other hand, the eviction of Zachary by defendant under these circumstances will have a significantly deleterious impact on his effort to live independently as well as causing him deep personal shame, and undermine his sense of worth and confidence, all of which likely will cause lasting and irreparable consequences to him.

19.     Defendant's explanation for its issuance of the Notice to Vacate, namely that it was unaware of the facts relating to the incident with Zachary Famous when it entered into the *Tenancy*

4

*Agreement* is plainly pretextual and not the basis for its action. Defendant's assertion that the tenant subsequently obtained a Protection From Abuse ("PFA") order does not show that Zachary engaged in any other or further conduct. Further, on information and belief, it is averred that the tenant who obtained that PFA order has since moved out of the building and Zachary has, through counsel, moved to vacate the PFA order because, among other things, of a lack of adequate notice of the hearing and no showing that he had engaged in any threatening or abusive conduct under the PFA statute.

20.     That motion to vacate is pending in the Court of Common Pleas of Montgomery County, Pennsylvania as of the filing of this Complaint.

IV.  <u>CLAIMS</u>

<u>COUNT I</u>
<u>VIOLATION OF the FAIR HOUSING ACT</u>

42 U.S.C.§3601 et seq.

21.     Plaintiffs incorporate herein by reference, as if specifically pleaded, the allegations set forth in paragraphs 1 through 20 above.

22.     The FHA, in the context of protection for disabled persons, makes it unlawful to "discriminate in the sale or rental . . . [or] in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—

(A)  that buyer or renter;

(B)  a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(C)  any person associated with that buyer or renter." 42 U.S.C. § 3604(f)(1)-(2) (emphasis added).

23.     Defendant's apartment building is a "dwelling" within the meaning of 42 U.S.C. § 3602(b).

24.     Zachary Famous, a resident in the apartment building, is a person with disabilities within the meaning of 42 U.S.C. § 3602(h) and his father, Gregory, is a person associated with him and is a co-signer on the lease with his son.

25.     Defendant's actions described above constitute:

a.  discrimination in the sale or rental, or otherwise making unavailable or denying, a dwelling because of disability, in violation of the FHA, 42 U.S.C. § 3604(f)(1);

b.  discrimination in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of disability, in violation of the FHA, 42 U.S.C. § 3604(f)(2); and

c.  a refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a person an equal opportunity to use and enjoy a dwelling, in violation of the FHA, 42 U.S.C. § 3604(f)(3).

## COUNT II

## BREACH OF CONTRACT

26.     Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

27.     Defendant's actions constitute a breach of the terms of the lease agreement for the leased premises and an additional breach of the *Tenancy Agreement*.

28.     As a result of defendant's breaches of contract, plaintiffs have been injured and are entitled to money damages.

<u>PRAYER FOR RELIEF</u>

Plaintiffs request that the Court order appropriate injunctive relief, including that:

A.  Defendant cease its policy and practice of refusing to rent to Zachary Famous and take appropriate, nondiscriminatory measures to accept him as a tenant; and

B.  Defendant take affirmative steps as to its legal obligations under the FHA, including but not limited to providing training to its employees and agents, and supervision to prevent future unlawful housing discrimination, and publicly promoting anti-discrimination policy language in Defendant's' public-facing media and rental applications.

Plaintiffs further request that the Court:

C.  Award Plaintiffs monetary damages in an amount to be determined at trial;

D.  Award Plaintiffs reasonable attorneys' fees and costs;

E.  Award Plaintiffs punitive damages in an amount to be determined at trial; and

F.  Grant any such other relief as the Court may deem just and proper.

Respectfully submitted,
ZARWIN, BAUM, DeVITO, KAPLAN,
SCHAER & TODDY, P.C.


*/s/ David F. McComb*
David F. McComb
*Attorney ID No. 35754*
dfmccomb@zarwin.com
One Commerce Square
2005 Market Street, 16th Floor
Philadelphia, PA 19103
(215) 569-2800
Attorneys for Plaintiffs

DATED:  February 23, 2023

7

# EXHIBIT "A"

# Brenton Hall

6/20/2022

Zachary Famous

115-117 N. Essex Ave. #B201

Narberth, PA 19072

Thank you for your residency!!!!  Our team hopes that you've enjoyed living here and will remain a valued member of our community.  Your current lease agreement is scheduled to expire on **8/31/2022**.  With the steady increase in the cost of operation and maintaining our beautiful community, adjustments in the rental rates are sometimes unavoidable.  Please be assured that we have attempted to use due restraint with the amount that we have increased rents.

Please see your new lease options listed below.  Feel free to fill out one of the options on the bottom portion of this form and return it to cjohnes@sovproperties.com **no later** than **7/1/2022**.

While we are hoping that you stay longer with us, please remember that per your leasing agreement, a sixty (60) day written notice of intent to vacate is required to properly terminate your lease.  If a proper sixty (60) day notice is not received by **7/1/2022**, your lease will automatically renew as a **month-to-month** lease at the rate listed below**.** Month-to-Month (MTM) leases may be terminated with a sixty (60) day written notice effective on the first of the month following the date the notice is provided to management.

*Don't forget to renew your renter's insurance policy also if you decide to renew your lease!*

**X** I would like to extend my lease for another year beginning 9/1/2022-8/31/2023 at the new rate of $1,007

____ I would like to extend my lease on a month-to-month basis starting 9/1/2022 at the rate of $1,257

____ I would like to extend on a short term basis for _____ months at an additional cost of $200/mth + the revised yearly rent amount listed above.

____ I will be moving out 8/31/2022  Reason_____

Zack FAMOUS
Signature

Signature

9/7/22
Date

9/7/22
Date



1.  DATE of Lease: _____8/11/2021
2.  TENANT (list all Tenants): Zachary Famous    Gregory Famous (co-signor)
    Name, Mailing Address, Phone: _____610-909-4798_____

    _____, _____
    Name, Mailing Address, Phone: __Gregfamous1@hotmail.com_____, _____
    Name, Mailing Address, Phone: _____, _____
3.  LANDLORD/AGENT FOR THE  LANDLORD
    Sovereign Property Management. 102 Larch Circle, Suite 301 Newport, DE 19804. Phone:302-994-2505
4.  PROPERTY
    Landlord agrees to rent to Tenant the following Property:
    117 North Essex Avenue, Narberth, PA 19072
    -    Apartment B201 (Brenton Hall)
5.  STARTING AND ENDING DATES FOR THE LEASE (also called the TERM)
    A.   Starting Date: This Lease starts on September 1, 2021
    B.   Ending Date: This Lease ends August 31, 2022
6.  RENEWAL TERM
    This Lease shall automatically renew for a term of one month at the ending date unless:
    A.   Tenant gives Landlord 60 days written notice before Ending Date or before the end of any renewal term (first of the month), OR
    B.   Landlord gives Tenant 60 days written notice before Ending Date or before the end of any renewal term (first of the month).
    C.   When giving notice, the last day of tenancy must be the last day of the month; no pro-ration of partial months.

    If notice is given later than required, Rent is due for the entirety of the Renewal Term. Any renewal will be according to the terms of this Lease
    or any written changes to it.
7.  RENT
    A    The total amount of rent due over the term of this lease is $__11,400_____
    B.   The total rent due each month is    $950
    C.   Rent is due on or before the first day of each month.
    D.   Landlord does not have to ask Tenant to pay rent.
    E.   Tenant pays a late charge of 10% if rent is more than three days late (postmarked by the fifth or later).
    F.   Tenant makes payments by first class mail, postage prepaid, at the following address: Sovereign Property Management, 102 Larch Circle,
         Suite 301 Newport, DE 19804.
    G.   If for any reason a check used by Tenant to pay Landlord is returned without having been paid, Tenant shall pay a returned check fee of $50
         and take whatever other consequences there might be in making a late payment (for example, Late Fee).
    H.   Landlord's acceptance at any time of late payment is not a waiver of timely payments at a later time.
    I.   The security deposit may not be used to pay rent during the term or renewal term of this Lease.

8.  BEFORE MOVING IN, TENANT PAYS                                    PAID           DUE
    A.   Part of a month's rent plus pet rent                        $_____         $ _____
    B.   First month's rent September 2021:                          $_____         $__950___
    C.   Last month's rent                                           $_____         $ 950
    D.   Other                                                       $_____         $ _____
    E.   Security deposit:                                           $_300          $_650
    Total amount received to date:                                  $_             $_____
    Total amount due: $2,550
9.  USE OF PROPERTY
    A.   Tenant shall use property as a residence only.

B.  All Tenants are listed on this Lease.  No other persons may live there even temporarily, without Landlord's prior written permission.
C.  All Tenants agree to be joint and severally responsible for all agreements of this Lease, including payment of Rent.
D.  Tenant agrees to not engage in any illegal activities on the Property, nor shall Tenant allow others to engage in illegal activities on the Property, insofar as they have the power to stop such activities. Tenant are responsible for the conduct of their occupants, guests and visitors.
E.  If storage is made available in other parts of the building, it is not considered part of the rent. Tenant understands that storage is to be used at

Tenant's own risk. Landlord assumes no responsibility for theft or damage of any kind resulting from landlord's negligence, carelessness or any other cause.

10.  UTILITIES AND SERVICES
A.  Landlord shall pay for: heat, water, hot water, snow removal, trash removal, and lawn care.  Landlord reserves the right to change utility policy with 60 days' notice.
B.  Tenant shall pay for: electricity, gas for cooking stove, gas base charge (if applicable) and communications (phone/internet/cable)
C.  Tenant agrees to place trash and recycling in provided receptacles.  Tenant shall dispose of extraordinary trash such as Christmas trees and broken furniture by compacting into trash receptacles or hauling away. Tenant agrees to take electronic devices to a recycling location.

11.  LANDLORD'S RIGHT TO ENTER
A.  Tenant agrees to let Landlord or Landlord's representatives enter the property at reasonable hours to inspect, repair, or show the property to prospective buyers/renters, contractors, etc.
B.  Landlord shall give Tenant 24 hours' notice, or less with Tenant's approval, of date and time for the visit.  In cases of emergency, landlord may enter Property without notice.

12.  SECURITY DEPOSIT **landlord may withhold from the security deposit only what is reasonably necessary to cover the following tenant defaults:**
1.  Damages to the dwelling.
2.  Cleaning costs following the Tenant's departure.
3.  Unpaid rent and/or other accrued and unpaid charges.
B.  Within 30 days after Tenant has moved out completely, Landlord shall provide a written accounting of the disposition of Tenant's deposits and shall return any deposits remaining provided:
1.  Full term of lease has expired.
2.  Tenant has given 60 days written notice.
3.  All keys have been returned.
4.  Written forwarding address has been left with Landlord.
C.  Interest shall begin accruing on the security deposit after the second full year of tenancy. It shall be sent to the tenant after moveout minus an administrative cost of 1% per year.  If the passbook rate is below 1%, then no interest shall accrue.

13.  NO PETS
A.  Tenant shall not keep any pets on any part of the Property without landlords written permission.
B.  If a pet is permitted, Tenant shall be responsible for the repair of any damage caused by the pet, including, for example, replacement of flooring sprayed by pet.
C.  Permitted pet(s)  _ _ _ _ _ _ _ _ _ _ _ _ _

14.  SMOKE DETECTORS
A.  Tenant shall test (monthly) all smoke detectors and notify Landlord of any non-functioning smoke detector(s) or need for battery replacement.
B.  Tenant shall pay for any damage to Property resulting from tenant's failure to maintain smoke detectors.

15.  AFTER NOTICE TO END LEASE
A.  After Tenant or Landlord has given written notice to end this lease, Landlord may show Property to prospective residents. Landlord or Landlord's representative shall accompany any prospective resident(s).
B.  Tenant agrees to move out peacefully when lease has ended and to provide his/her forwarding address in writing.
C.  If Tenant remains on the premises following the date of his/her termination of tenancy, he/she is Holding Over and becomes liable for rental damages equaling one tenth of his/her then-current monthly rent per day plus any other damages his/her action may cause.

16.  ABANDONMENT
A.  If the tenant abandons property before the end of the lease, Landlord may re-let the premises and hold the tenant liable for any costs, lost rent or damage to the premises.
B.  In the event of move-out or Surrender or abandonment (as defined by Pennsylvania law), by signing this lease tenant agrees that Landlord May remove and store and/or dispose of tenant's property left behind howsoever landlord sees fit. Tenant shall be responsible for reasonable removal, storage, and disposal charges. Tenant initials: _____

17.  IF TENANT BREAKS LEASE
A.  Tenant breaks this Lease if:
1.  Tenant does not pay rent or other charges.
2.  Tenant leaves Property permanently before the end of the Lease.
3.  Tenant does not move out when supposed to.

4. Tenant fails to do anything to which Tenant has agreed in this Lease or in the Good Neighbor Agreement.

B. Non-payment of Rent: If Tenant breaks Lease by not paying rent or other charges, Landlord shall give Tenant written notice demanding payment and giving tenant FIVE CALENDAR DAYS to pay. If Tenant does not move out, Landlord may file a lawsuit to evict Tenant. Tenant's default may be reported to credit agencies. Tenant initials: _____

TENANT IS WAIVING OR GIVING UP TENANT'S RIGHT TO A LONGER NOTICE TO MOVE OUT.

C. Other lease violations: If tenant breaks any other term of this lease, Landlord shall give Tenant written notice describing the violation and giving Tenant FIVE CALENDAR DAYS to correct the problem. If tenant does not correct the problem, Landlord shall then give Tenant FIVE CALENDAR DAYS written notice to move from the Property. If tenant does not move out, landlord may file lawsuit to evict Tenant on the sixth day. TENANT IS WAIVING OR GIVING UP TENANT'S RIGHT TO LONGER NOTICES TO CORRECT PROBLEMS AND TO MOVE OUT.

D. If Tenant Breaks Lease for Any Reason, Landlord may:
   1. Get back possession of the Property by going to court to evict Tenant.
   2. File a lawsuit against Tenant for rents and charges not paid and for and rent charges for the rest of the lease term. If landlord wins, (gets a money judgment against tenant), Landlord may use the court process to take tenant's personal goods, furniture, motor vehicles, and money in banks.
   3. Keep Tenant's Security Deposit.
   4. Report tenant to national Credit Agencies.

E. If Tenant's breach results in dispute or litigation, tenant agrees to be responsible for fees and costs incurred, including reasonable attorneys' fees And/or the cost for Landlord or Landlord's agent to attend court hearings.

F. Tenant agrees that any/all notices may be served by Landlord by posting on entry door to Tenant's apartment.

G. POSSESSION if Landlord is unable to deliver possession to Tenant by the Starting Date of this Lease, Landlord shall not be held responsible for any damages Tenant suffers as a consequence. Landlord shall credit Tenant rent for every day that the apartment is unavailable.

H. This apartment shall be considered void if Landlord is unable to deliver possession within fifteen days following the Starting Date.

18. SALE OF PROPERTY
If Property is sold, landlord shall advise Tenant of contact information for the new Landlord and the amount of funds transferred on Tenant's behalf (security, advance rent, etc.). New Landlord shall assume all rights and duties described in this agreement.

19. SUBLEASING AND TRANSFER
A. Landlord may transfer this Lease to another landlord. Tenant agrees that this Lease remains the same with the new landlord.
B. Tenant may not transfer this lease or sublet (rent to another person) this property without landlord's written permission.

20. MEDIATION
Mediation is a way of resolving problems. A mediator helps the disputing parties reach and agreeable solution without having to involve the courts. Tenant agrees, at Landlord's option, to take any disputes arising from this Lease to a mediation program offered by the local association of realtors or to another mediator.

21. FRIVOLOUS LAWSUITS
If Tenant brings a cause of action (lawsuit) against Landlord, and judgment is found in favor of Landlord, Tenant shall pay Landlord reasonable attorney's costs and landlord's costs arising from the action.

22. INSURANCE AND RELEASE
A. Tenant is advised and understands and agrees that personal injury to, and damage to the personal property of, Tenant, Tenant's guests, invitees, or uninvited visitors in or on the leased premises is not insured by the Landlord either damage or loss, and Landlord assumes no liability for any such damage or loss. Landlord shall not be responsible for personal injury, or loss of food, clothing, furniture, or any of Tenant's other possessions in the event of appliance failure, water leak or water back-up, bursting pipes, fire, loss of utility service, or other events, and in no event shall landlord be responsible for theft, vandalism, or mysterious disappearance of tenant's property regardless of the state of security of the premises. Further, if tenant or tenant's guest, invitee or uninvited visitor is injured on the premises, Tenant must give landlord written notice within seven days of the occurrence. For this reason:
TENANT SHALL OBTAIN A 'TENANT POLICY' INCLUDING FIRE & LIABILITY ($300,000 min) INSURANCE TO PROTECT TENANT, TENANT'S PROPERTY, AND TENANT'S GUESTS WHO ARE INJURED WHILE ON THE PROPERTY.

B. Tenant is responsible for any loss to Landlord that tenant, tenant's family, or Tenant's guests cause
C. Tenant agrees that they shall do nothing on the property, nor store anything on the property that shall result in an increase in landlord's insurance costs. If tenant does cause an increase in landlord's insurance costs, tenant agrees to pay the increase.
D. By signing this agreement, tenant agrees to hold landlord harmless for losses or claims (including attorneys' fees) which result from any damage or injury, including slip and fall type injuries that occur to Tenant or Tenant's guest(s) on the premises; provided Landlord has maintained the property in accordance with municipal requirements.

23. CAPTIONS, ILLEGAL PROVISIONS NOT AFFECTING LEGAL PROVISIONS, ENTIRE AGREEMENT
The headings in this lease are meant only to make it easier to find the paragraphs. Whatever item in this agreement is found to be contrary to any local, state, or federal law shall be considered null and void, as if it had never appeared in this agreement and it shall not affect the validity of any other item in this agreement. This lease and the Good Neighbor Agreement constitute the entire agreement between Tenant and Landlord. No spoken or other written agreements made before are a part of this Lease unless they are included in this Lease

24. NOTICE BEFORE SIGNING: THIS IS A LEGAL CONTRACT. IF TENANT HAS LEGAL QUESTIONS, TENANT IS ADVISED TO TALK TO A LAWYER BEFORE

25. **WAIVER OF NOTICE:** If the Landlord desires to start a Court action to recover possession for nonpayment of rent or for any other reason, the Tenant specifically waives any notice period contained in Section 501 of the Landlord and Tenant Act of 1951, as amended, 68 P.S. 250.101 et seq., or any other notice period established by law. **THEREFORE, THE LANDLORD MAY FILE SUIT AGAINST THE TENANT WITHOUT NOTICE IF THE TENANT BREACHES THIS LEASE AGREEMENT, AND TENANT AGREES THAT NO NOTICE IS REQUIRED.**

26. SIGNING

TENANT: X Zack Famous      DATE: 8/27      Cosigner
TENANT: X Greg Jr      DATE: 8/27

TENANT: _____ DATE: _____      TENANT: _____ DATE: _____

LANDLORD: _____ DATE: _____


**LEAD PAINT WARNING STATEMENT:** Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not taken care of properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, landlord must disclose the presence of known lead-based paint and lead-based paint hazards in the dwelling Tenants must also receive a federally approved pamphlet on lead poisoning prevention. Tenant acknowledges:

A.     Landlord does not know of any lead-based paint or lead-based paint hazards (dangers) on the property Due to the age of the building, the presence of lead-based paint is likely.  The Tenant is advised to not sign this lease if Tenant is concerned about lead-based paint hazards.

B.     Landlord has no reports or records about lead-based paint or lead-based paint hazards at the property.

C.     Tenant received the information in the EPA publication *Protect Your Family from Lead in Your Home* by following this link: https://www.hud.gov/program_offices/healthy_homes/healthyhomes/lead or by requesting a paper copy from Landlord.

D.     Tenant agrees to hold Landlord not responsible for any present or future health problems due to lead-based paint or lead-based paint hazards.

E.     Landlord and Tenant certify, by signing this Lease that the information given is true to the best of their knowledge.



# GOOD NEIGHBOR
# AGREEMENT

**TENANT AFFIRMATIVELY AGREES TO ALL OF THE FOLLOWING:**

**Pay rent on or before the 1st of the month.** Date your rent check for the first, but as a courtesy, deliver it a few days before the first. We will never deposit a check until the first. Rent checks can be mailed or dropped off at the office. Please put your check in an envelope. You may also deliver a number of checks dates the first of consecutive months, we will keep them locked up and deposit one per month as dated.

**Contact Landlord via email or the office phone.**
Management: miacono@sovproperties.com or the office phone 302-994-2505
Maintenance Emergencies (including lockouts): 302-994-2505

**Keep us updated with any contact Information changes.** If your mobile number or email changes, you agree to email us with updates at miacono@sovproperties.com. You hereby agree to accept apartment related notices (such as changes to rent or terms) via email and to take responsibility for missed communications if you fail to update us.

**Give 60 days notice for move-out.** The 60 days starts on the 1st of any given month. That means if you give notice on the 20th, the 60 days does not start counting until 10 days or so later on the 1st. If you move out or give notice to move out before the end of your lease, you agree to pay an early departure fee equal to two month's rent in addition to the 60 day notice.

**Sort trash and recycling and place in the appropriate places/containers.** In accordance with borough ordinance you agree to separate your recycles into three categories.
**Corrugated cardboard boxes-** includes any bulky cardboard. DO NOT overload the recycle bins with cardboard.
**Mixed recycles-** includes paper products (please flatten cereal boxes, shoe boxes, etc.) plastics numbered 1-7, and glass or metal that came with food in them (not broken stem ware, tinfoil balls or broken pots). Also, to conserve space, please empty mixed recycles out of any bags when dumping into the trash receptacles.
**Regular trash-** includes everything else. Use trashcan liners, which are water-tight (not supermarket bags which drip on the carpet). If there is a lobby receptacle for junk mail recycling, do not put trash (plastic newspaper bags, coffee cups, food wrappers) or regular paper recycling in it. It is a convenience for your junk mail only.

**Respect everyone's right to "quiet enjoyment" of his or her home.** Please do not make unreasonable noises, including TV, music, or musical instruments, especially before 9:00 pm and 8:00 am. You also agree to cover all walking areas of your apartment with area rugs or padding if necessary to control noises, kindly remove your shoes. If you feel your neighbor is making an unreasonable amount of noise, you agree to knock on his/her door and politely ask for more consideration. If you are unable to resolve a noise issue amicably, you agree to call the Narberth Police and ask them to make a determination if the noise is reasonable. In the event you need Landlord to intervene, it will be necessary to deliver a copy of the police report to Landlord first. You agree to NEVER bang on the walls, floor, or ceiling to attempt to quiet your neighbor.

**Respect the Landlord's property.** Wipe your feet on the entry mats to help keep hall carpets clean. Do not leave personal items, such as floor mats, shoes, umbrellas, or trash bags in the hallways or other common areas. Do not leave windows open during heavy rains. Let Landlord know immediately of small problems before they get big. For example, dripping faucets, sticky door latches/locks, and slow drains to name a few. Do not allow children (or adults) to play on the stairs, fire escapes, or other common

areas.

**Use exceptional care in bad weather.** You must use care walking in and out of the property and this is especially true during rain, snow and ice. By signing below, you agree that Landlord has NOT been negligent so long as Landlord has met the municipal requirements for snow management. Typically, this means that snow removal or salting (if applicable) will be completed within 24 hours of the end of any weather event; our goal is to do so within 4 hours but this is not always possible. Further, please understand that we have limited control over snow removal contractors who typically have many properties to clear as quickly as possible. This means that snow removal (shoveling, plowing, etc.) may happen at inconvenient hours day or night. Your understanding is greatly appreciated.

**Feed the toilet and garbage disposal (if applicable)** ONLY the things for which they were designed.  For toilets, this means toilet paper and human waste ONLY.  Do not put paper towels, feminine hygiene products, Q-tips or dental floss in the toilet.  And do NOT put wipes in the toilet EVEN IF THEY SAY "FLUSHABLE".  You will be charged for any clogs you cause.  If your apartment has a garbage disposal, do not put down any animal products (meat, fat, bone), no oils, and no banana peels, celery or other stringy plant material. Never put oils or fats down any drain.

**Check the neighborhood before calling about utility outages.** If your electric is out, check the hallway, your neighbor's apartments, the street lights, and neighbor's houses. When there is an outage beyond the building, please don't call us; call the utility company. If there is an outage that only affects your apartment or only your building, please call the emergency number. This is true for electric, gas, and water. If you have a problem with TV or internet providers, please call them directly. However, don't wait to call the emergency number if the building seems to be cold. Let us know by email or by the office phone if there is a common area light out, if there is a problem with laundry equipment, if there is a plumbing leak in the building, if an entry door lock is sticky or troublesome or anything else that requires maintenance. We want to address problems quickly. Please do not assume someone else will call.

**Keep track of keys.** Your keys can not be duplicated, but you may request as many copies as you need. Please do not lose any. We will keep track of how many keys you have been issued and if they are not all returned, we will have to charge to re-key. If you lock yourself out once in a while, we will be happy to let you in. If you lock yourself out after business hours or if you do so repeatedly, we will charge a lock-out service fee of $35. Do not, under any circumstances, change the locks. If you have a security concern of your own making, you may request a lock change (charges will apply).

**Ask permission before making any changes to the apartment.** Repainting must be done by Landlord's contractors. Never put adhesive shelf paper on the cabinets. Use hardened pin style picture hooks. If you must mark the walls for picture hanging, make light, small marks in pencil. Never use pen on the walls. Never use spackle anywhere. Carefully remove all picture hooks prior to move-out, but leave the filling and painting to us. If you have cable/internet run in your apartment, do not allow the provider to use double sided foam tape anywhere. You will be responsible for the considerable damage foam tape does upon removal. Carefully remove cable lines and staples prior to move-out.

**Conserve resources.** If you have a thermostat, please program it for your schedule to save on heating. Keep your windows closed during heating season, especially if you have a thermostat in your apartment. Take reasonable showers. Let us know immediately of any faucet drips or other leaks. Except for those permanently installed, you agree to remove a/c units in the fall.

**Keep the apartment free of dangerous materials.**  Do not keep heavy items (waterbeds, piano, large aquarium) or flammable items (gas or kerosene heaters, tiki torches).  You agree to be responsible for all consequences of operating open flame equipment (including fire damage and borough fines). No candles please.

**Keep the apartment clean and return it the way you found it.** Good housekeeping is important- prevents insect and vermin infestation, extends the useful lives of tub and tile-work and appliances. We will treat for most pests; please let us know as soon as you see any, especially ants, which are very easy to eliminate when caught early. As an exception, you agree to be financially responsible for any bed bug infestation. Because bed bugs can only enter the apartment when you bring them in, please Google sensible bed bug precautions. We expect you to leave the apartment as clean as you found it, ready for the next resident when you leave. Unless noted as broken at move in, you agree to be responsible for any windows in your apartment that become broken. You agree to pay to repair any damage to the property or to any item in or on the property that you and your guests cause through lack of care or any damage caused by forced entry of the property.

**Refer friends and colleagues.** If you like the building and the management, please send us your referrals. Make sure they mention your name and we will give you a referral gift of $100 or more.

**Be neighborly.** Narberth is a friendly town. As well as respecting the other residents of the building, please extend the same kindness to others on the street and in town. Shop at the local merchants, they need your support. Say hello to strangers when walking around and get to know the community.

TENANT: X _Zack Farrars_ DATE: _8/27_

~~TENANT~~ X _____ DATE: _8/27_

TENANT: _____ DATE: _____

TENANT: _____ DATE: _____

LANDLORD: _____ DATE: _____

# EXHIBIT "B"

# Incident Report



**BOROUGH OF NARBERTH**
**NARBERTH POLICE DEPARTMEN**
**100 CONWAY AVE**
**NARBERTH, PA 19072**

**Phone: (610)664-8160   Fax: (610)664-8140**

Approved Report [p] MICHAEL VERNACCHIO

| | |
|---|---|
| Incident # | Reference # |
| 2209256003 | |

| Criminal Code | Title : |
| | Section : |
| | Sub-Section : |
| | Description : |

| UCR Codes | 3500   SUSPICIOUS PERSONS,AUTOS,CIRCUMSTANCES |

| | |
|---|---|
| Municipality | BOROUGH OF NARBERTH (412) |
| Report Type | DISPATCH |
| Location | 117 N ESSEX AVE B202 - NARBERTH 19072 |
| Landmark | |
| Premise | APARTMENT |
| Point of Entry | |
| Meth. of Entry | |
| Patrol Zone | Grid |
| Reported | 09/25/2022 @ 00:06 (Sun) |
| Discovered | @ |
| Last Secure | @ |
| Received | 00:06   Dispatched 00:07 |
| Arrived | 00:09   Cleared   00:44 |
| Status | CLOSED/CLEARED |
| Disposition | CLOSED - NO FURTHER ACTION |
| Clear Date | 09/25/2022 |
| Badge | 511 - OFFICER KELLY LYNN |

| Investigating Officer | Signature | Date | Approving Officer | Signature | Date |
|---|---|---|---|---|---|

| 2209256003 | 3500 - SUSPICIOUS PERSONS,AUTOS,CIRCUMSTANCES |
|---|---|

## Persons Involved

### FAMOUS, ZACHARY COLE
Arrest Date :          Disposition Date :

| Role<br>OFFENDER | Incident Classification<br>3500  SUSPICIOUS PERSONS,AUTOS,CIRCUMSTANCES | How Charged<br>NONE/NOT INVOLVED | Disposition |
|---|---|---|---|

Alias
Age-DOB    22 - 10/18/1999
Race       WHITE
Sex        MALE
Ethnicity  NON-HISPANIC
Marital Stat
Residency
SSN
Gang
Tattoo
Clothing
GBM Id
-Entered    / /
-Released   / /
OLN/State  34141400/PA
Injury

Height
Weight       0
Hair       RED/AUBURN
Eyes       BLUE
Build
Complex.

Home Addr  117 N ESSEX AVE B201
           NARBERTH, PA  19072
Home Ph #
Work Ph #
Cell Ph #    (610)674-5877
Other Ph #
E-Mail
Employer

Occupation
Addl Addr    None

No Photo

Comment  Above named individual is on the autism spectrum

### BARBERIS, ELISE CATHERINE
Arrest Date :          Disposition Date :

| Role<br>COMPLAINANT | Incident Classification<br>3500  SUSPICIOUS PERSONS,AUTOS,CIRCUMSTANCES | How Charged | Disposition |
|---|---|---|---|

Alias
Age-DOB    28 - 07/23/1994
Race       WHITE
Sex        FEMALE
Ethnicity  NON-HISPANIC
Marital Stat
Residency
SSN
Gang
Tattoo
Clothing
GBM Id
-Entered    / /
-Released   / /
OLN/State  34440927/PA
Injury

Height       '56"
Weight       0
Hair       RED/AUBURN
Eyes       BLUE
Build
Complex.

Home Addr  117 N ESSEX AVE B202
           NARBERTH, PA  19072
Home Ph #
Work Ph #
Cell Ph #    (503)616-1537
Other Ph #
E-Mail
Employer    STUDENT

Occupation
Addl Addr    None

No Photo

2209256003

3500 - SUSPICIOUS PERSONS, AUTOS, CIRCUMSTANCES

**ELDER, JUSTIN MACGREGOR**        Arrest Date :        Disposition Date :

| Role OTHER/INVOLVED | Incident Classification 3500 SUSPICIOUS PERSONS, AUTOS, CIRCUMSTANCES | How Charged | Disposition |
|---|---|---|---|

| | | | |
|---|---|---|---|
| Alias | | | |
| Age-DOB | 35 - 08/13/1987 | Height | |
| Race | WHITE | Weight | 0 | Home Addr | 275 S BRYN MAWR AVE J21 |
| Sex | MALE | Hair | RED/AUBURN | | BRYN MAWR, PA 19010 |
| Ethnicity | NON-HISPANIC | Eyes | BLUE | | |
| Marital Stat | | Build | TALL | Home Ph # | |
| Residency | | Complex. | | Work Ph # | |
| SSN | | | | Cell Ph # | (302)994-2505 |
| Gang | | | | Other Ph # | |
| Tattoo | | | | E-Mail | |
| Clothing | | | | Employer | |
| GBM Id | | | | | |
| -Entered | / / | | | Occupation | |
| -Released | / / | | | Addl Addr | None |
| OLN/State | 34333432/PA | | | | |
| Injury | | | | | |

No Photo

### Main Narrative
### OFFICER KELLY LYNN (511)

09/25/2022 00:06 - 511   OFFICER KELLY LYNN

On the above date I responded to 117 N. Essex Avenue on the report of suspicious circumstances with LMPD Ofc. Zolnowski. Upon our arrival we located two males outside of the building, later identified as Justin Elder, the complainant, and Zachary Famous, the offender. Elder was calling on behalf of Elise Barberis who is the actual complainant.

I requested that Ofc. Zolnowski stay with Famous while I spoke with Elder. Elder brought me inside of the apartment building to speak with Barberis, the resident of the apartment. Barberis states that she had her friend, Elder, come to her apartment with her because she was beginning to feel uncomfortable this week. Barberis states that she lives directly across the hall from Famous. This week 5 of the last 7 times she has exited her apartment, Famous has exited immediately after and followed her out of the building. Three of the five times Famous has not been wearing pants and has been in underwear. Barberis stated at no point did she see his genitals or see him touch his genitals. At this time Barberis does not want to assist in prosecution, she requested that we speak to him and advise him to not have contact with her and to not leave his apartment unless he is fully dressed.

I went outside to speak with Famous. Upon speaking with him it became apparent that he was developmentally disabled. Famous admitted to following Barberis, often times in his underwear. Famous stated he knew it was wrong but that he was aroused and did not know how else to handle it. Famous stated he has been diagnosed with autism and goes to JEVS, which is an organization that helps developmentally disabled adults live independently. I told him he needed to contact his counselor there in order to help him find a therapist to assist him with his compulsions. I informed Famous if he had any



| 2209256003 | 3500 - SUSPICIOUS PERSONS,AUTOS,CIRCUMSTANCES |

contact with Barberis going forward it would be considered criminal harassment. I also informed him that under no circumstances was he to leave his apartment not wearing pants.

Barberis was visibly upset and did not feel she could fill out a statement. I requested that Barberis meet me at the station on Sunday evening in order to complete one. I also requested she send me her property manager's information so that they could be made aware of the situation.

# EXHIBIT "C"

# M|V|Z

**ATTORNEYS AT LAW**

## MORTON VALIHURA & ZERBATO

Michael P. Morton, Esquire (DE)(PA)
Robert J. Valihura, Jr., Esquire (DE)
David C. Zerbato, Esquire (DE)(PA)(MD)
Jillian M. Pratt, Esquire (DE)(PA)(NJ)
Caren L. Sydnor, Esquire (DE)(PA)(NJ)
Christopher J. Kephart, Esquire (PA)

DELAWARE CERTIFIED PARALEGALS
Sherry Thomas Lyons, DCP
Ellen Sebastiani, DCP
Jessica B. Golden, DCP
Heidi R. Smith, DCP
Gabriela K. Giordano, DCP

## NOTICE TO QUIT

December 15, 2022

**VIA POSTING AND FIRST-CLASS MAIL**
**WITH CERTIFICATE OF MAILING**
Zachary Famous
117 N. Essex Ave., Apt. B201
Narberth, PA 19072

### RE:   NOTICE TO VACATE ON OR BEFORE JANUARY 15, 2023

Dear Mr. Famous,

I represent your landlord Sovereign Property Management for Brenton Hall Apartments. This letter constitutes notice that your landlord is terminating your lease due to material violations of its terms effective January 15, 2023. The basis for this termination is as follows:

As you are aware, in early October 2022, your landlord received several complaints regarding your conduct towards a few female residents. Based upon those complaints, your landlord provided notice of its intent to terminate your lease. Thereafter, you made a reasonable accommodation request which was ultimately granted, resulting in the termination notice being rescinded.

On November 30, 2022, we were contacted by counsel for one of the residents who had made one of the prior complaints regarding your conduct. She provided additional information not previously provided to us and included a copy of a Final Sexual Violence Protection Order she obtained against you on November 29, 2022. Upon review of the letter from the resident's attorney, and the petition filed by that resident, which was ultimately decided in her favor, the scope of your conduct has greatly expanded from what was previously known by your landlord. It has now become apparent that the initial incidents occurring in September 2022 were not isolated. You have engaged in a series of conduct towards this resident beginning in August 2022, which has included multiple incidents, ranging from following her in your underwear, adjusting your underwear to appear naked, exposing yourself to her, timing your exiting and entry to your unit to coincide with hers, watching her from your window, and following her around the community.

---

Greenville Professional Center • 3704 Kennett Pike, Suite 200 • Greenville, DE 19807
Telephone: 302-426-1313 • Fax: 302-426-1300 • Web: www.mvzllc.com

DOVER OFFICE • 1675 S. State Street, Suite E • Dover, DE 19901
LEWES OFFICE • 17527 Nassau Commons Boulevard, Suite 107 • Lewes, DE 19958

On November 9, 2022, you continued this conduct. On November 11, 2022, you waited for the female resident to leave her unit and followed her once again. You continued following her as she left the community and walked down the block. After getting in her vehicle, she returned approximately 10 minutes later, and you were still out front of your building waiting for her as she returned.

On November 29, 2022, after a hearing, the court found sufficient evidence to warrant a final protective order being put in place against you effective for a three (3) year period. This conduct constitutes material violations of your rental agreement and the rules and regulations of the community. You have until January 15, 2023, to vacate and return possession of your rental unit.

If you fail to vacate and move on or before January 15, 2023, your landlord will file a summary possession action against you seeking possession of your rental unit, to which you have a right to appear and defend yourself.

Please be aware that you vacating the rental unit does not waive any right or remedy your landlord may have to collect any balance due and owing under your rental agreement. However, upon returning possession, additional rent and late fees will no longer accrue.

Any payment you make will be accepted and applied to your balance. **Acceptance of such payment does not create a new rental agreement, nor will it cure the violation and termination of your rental agreement.** Acceptance of any payment is with all rights and reservations permitted under the rental agreement and Pennsylvania law.

Should you have any questions, you may contact management or my office.

Sincerely,

David C. Zerbato, Esq.

cc:     Sovereign Property Management for Brenton Hall Apartments
        Gregory Famous
        David F. McComb, Esq.

**TENANCY AGREEMENT**

THIS TENANCY AGREEMENT (the "Agreement") is made this _____ day of October, 2022, by and between Brenton Hall Apartments ("Landlord"), and Zachary Famous ("Tenant") (collectively, the "Parties").

<u>RECITALS</u>

WHEREAS, allegations were made that in early October, 2022, Tenant acted in an inappropriate manner towards three (3) female residents, on three (3) separate occasions, although all such alleged incidents occurred in a short period of time;

WHEREAS, as a result of such allegations, on October 6, 2022, Landlord terminated the lease, and requested Tenant vacate the rental unit on or before October 31, 2022;

WHEREAS, on October 13, 2022, Tenant, through counsel, requested a reasonable accommodation due to an asserted disability, Autism, and proposed certain restrictions on Tenant's conduct, identified below, in exchange for the withdrawal of the request to terminate the lease and vacate the rental unit;

WHEREAS, on October 26, 2022, in reliance upon statements made by counsel for Tenant in support of the accommodation request, Landlord granted the request;

WHEREAS, Tenant denies the alleged conduct violated the terms and conditions of his lease;

WHEREAS, this Agreement memorializes the terms of the accommodation and obligations of the Parties;

NOW, THEREFORE, in consideration of the acknowledgements, promises, and mutual covenants contained herein, and in further consideration of the Recitals above, the Parties agree as follows:

<u>TERMS</u>

1. <u>Withdraw of Termination of Lease and Request to Vacate</u>. Landlord hereby withdraws its request for Tenant to vacate the rental unit. The current lease shall continue in its normal course pursuant to its terms and conditions.

2. <u>Mitigation of Conduct.</u> Tenant agrees not to leave his apartment unless fully dressed, i.e. a shirt, pants or shorts (not just underwear), and footwear, and agrees not to get dressed or undressed near a window unless the blinds, or other appropriate window treatment, are drawn and/or closed.

3. <u>Binding Effect</u>. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

4. <u>Headings</u>. The headings contained in this Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation hereof.

5. <u>Governing Law</u>. This Agreement shall be governed by, and construed and interpreted in accordance with, the laws of the State of Pennsylvania, excluding conflict of laws principles.

6.      <u>Assistance of Counsel</u>.  The Parties acknowledge and agree that they have voluntarily executed this Agreement with a complete understanding of its terms and were represented by counsel or had the opportunity to retain counsel.

7.      <u>Counterparts.</u> This Agreement may be executed in counterparts.

8.      <u>Preservation of Rights.</u> Nothing herein shall prohibit the Parties from exercising any right or remedy they may have regarding the tenancy in the future.

IN WITNESS HEREOF, the Parties hereto have caused this Agreement to be signed as of the day and year first above written.

Brenton Hall Apartments

By: Michael Iacono, Director of Operations

Zachary Famous

**CERTIFICATE OF SERVICE**

I, David F. McComb, Esquire, hereby certify that a true and correct copy of Plaintiff's Amended Complaint has been served upon the following via the court's ECF filing system on February 23, 2023:

Gino P. Mecoli
Reilly, Janiczek & Mcdevitt
2500 Mcclellan Boulevard
Suite 240
Merchantville, NJ 08109

By:*/s/ David F. McComb*
David F. McComb, Esquire